IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-00586-REB-PAC

DIANA ALLEN,

     Plaintiff,

v.

NELNET, INC., a Nebraska corporation,

     Defendant.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

O. Edward Schlatter, United States Magistrate Judge

     In this action arising under the court's diversity jurisdiction, plaintiff Diana Allen, *pro se*, asserts that the defendant, Nelnet, Inc., committed numerous acts of libel against her by filing incorrect information about the status of plaintiff's loans with the national credit reporting agencies, thereby damaging plaintiff's ability to obtain credit.  Ms. Allen further claims that Nelnet, Inc. has harassed her by telephone, and through the mail, for several years, in an attempt to collect on the loans, causing plaintiff to suffer emotional distress.  Plaintiff seeks compensatory and punitive damages.

     An Order of Reference referred this case to former Magistrate Judge Patricia A. Coan on April 4, 2006 to conduct pretrial proceedings and to issue recommendations for rulings on dispositive motions.  Upon Judge Coan's retirement, I temporarily assumed her caseload.  The matter before the court at this time is the Motion of Defendant Nelnet, Inc., for Summary Judgment on All Claims Asserted in Plaintiff's Complaint [Doc. #42; filed December 14, 2006].  The motion is fully briefed and is ripe for disposition.

I.

The purpose of summary judgment is to determine whether trial is necessary. *White v. York Int'l. Corp.,* 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When applying this standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. *Gray v. Phillips Petroleum*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Speculation, supposition and unsupported factual allegations will not establish an issue of material fact necessitating trial. *Handy v. Price,* 996 F.2d at 1064, 1068 (10th Cir. 1993).

II.

The following facts are undisputed, or, if disputed, are construed in plaintiff's favor in resolving defendant's Rule 56 motion. Plaintiff Diana Allen executed a Family Federal Education Loan Program Federal Stafford Loan Master Promissory Note on July 30, 2001 ("Master Promissory Note"). (Deposition of Diana Allen, at 133, and deposition ex. 1, attached to Defendant's Motion for Summary Judgment ("MSJ"); Scheduling Order, Doc. #21, Undisputed Facts, ¶1) Plaintiff received seven Federal Stafford Loans under the

Master Promissory Note in the following amounts: (a) $2,625.00 on August 8, 2001; (b) $1,432.00 on December 26, 2001; (c) $1,683.00 on August 12, 2002; (d) $3,500.00 on August 12, 2002; (e) $409.00 on January 14, 2003; $827.00 on January 14, 2003; and, (f) $3,151.00 on August 12, 2003.  (Affidavit of Jill R. Warner, attached to Defendant's MSJ, at ¶4; Scheduling Order, Undisputed Facts, ¶2)

Plaintiff received a copy of the Borrower's Rights and Responsibilities Statement at the time she signed the Master Promissory Note. (Allen Deposition, 137-38, 141-42) The Borrower's Rights and Responsibilities Statement, which is incorporated into the Master Promissory Note, provides, in pertinent part: "I will receive a 6-month grace period before the first payment of my Federal Stafford Loan must be made.  The grace period begins the day after I cease to be enrolled at least half time at an eligible school."  (Allen Deposition, ex. 1; ex. 3, ¶11)

Plaintiff also received a Federal Stafford Loan Plain Language Disclosure after signing the Master Promissory Note.  (*Id.* at 138-139, and deposition ex. 2)

Plaintiff did not complete her education program.  (Allen Deposition, at 129) She was not enrolled in any classes after December 2003.  (Warner Affidavit, ¶6)  The first installment payment on the loans was due in July 2004.  (*Id.*)

Defendant Nelnet, Inc. ("Nelnet") became the servicer of plaintiff's loans on November 1, 2004.  (Warner Affidavit, ¶5)

**A.    Plaintiff's Default on the Loan Payments**

Plaintiff has never made a payment on the loans.  (Allen Deposition, at 149; Warner Affidavit, ¶7; Scheduling Order, Undisputed Facts, ¶3)    The Master Promissory Note

states that the following events shall constitute a default on the loans: ". . .[failure] to make installment payments, when due, provided [the] failure has persisted for 270 days for payments due monthly."  (Allen Deposition, at 134-35, and deposition ex. 1, at p.2) Plaintiff's loans were in default as of April 7, 2005.  (Warner Affidavit, ¶8)

In March and April 2005, plaintiff advised Nelnet that she believed her loans should be discharged because of her disability.  (Warner Affidavit, ¶9) Defendant responded with a letter, dated April 27, 2005, and included a copy of a Loan Discharge Application: Total and Permanent Disability form, and a copy of the Borrower's Rights and Responsibilities Statement.  (Warner Affidavit, ¶10) The letter stated:

> Please find a copy of the borrower's rights and responsibilities enclosed.  The highlighted section states that a loan cannot be discharged due to a permanent and total disability based on a condition that existed before the borrower applied for a loan, unless a physician certifies that the condition substantially deteriorated after the loan was made.
> . . .
>
> The account is 290 days past due and $2,133.85 delinquent. Per Federal regulations under the Higher Education Act, lenders are required to contact borrowers regarding delinquent accounts. Nelnet offers a variety of options to assist you if you are unable to make payments at this time.  Please contact us for deferment, repayment, consolidation, and forbearance options for which you may quality.

(*Id.*, and attached Ex. A)

Subsequently, a credit bureau advised Nelnet that plaintiff disputed her loans. (Warner Affidavit, ¶11) Defendant investigated plaintiff's dispute and responded to the dispute in a letter to plaintiff, dated August 12, 2005.  That letter stated:

> After researching your account, we verified the credit reporting

> in question as an accurate and valid reporting. Your seven loans defaulted and were sent to the guarantor for collection as of June 27, 2005. Therefore seven separate entries will be showing on each of the major credit bureaus. Our records show that you have been sent a copy of your promissory note to confirm the debt is yours. We also show that we received correspondence from you on April 26, 2005 stating that you were disabled. On April 27, 2005, an application for loan discharge due to Total and Permanent Disability was mailed to you. The form needed to be filled out and signed by your doctor, giving a diagnosis and date of disability along with an explanation as to how the disability prevents you from working at any job now or in the future. As of today's date, we have no record of receiving the completed form.

(Warner Affidavit, ¶11, and attached ex. B)

Ms. Allen has not provided Nelnet with a complete Loan Discharge Application: Total and Permanent Disability.  (Allen Deposition, at 160; Warner Affidavit, ¶12; Scheduling Order, Undisputed Facts, ¶4)

**B.     Statements Made to National Credit Bureaus**

Beginning November 1, 2004 and thereafter, defendant provided reports to national credit bureaus concerning the amount and the repayment status of plaintiff's loans. (Warner Affidavit, ¶13)  Between November 2004 and May 2005, defendant reported the status of each of plaintiff's loans as "past due."  (*Id.*)

In May 2005, defendant filed a claim relating to plaintiff's loans with the loan guarantor.  During the pendency of that claim, defendant reported the status of each of plaintiff's loans as "claim filed" or "claim filed with government."  (Warner Affidavit, ¶14) After defendant received payment from the guarantor, defendant reported the status of each of plaintiff's loans as "paid – collection" or "charge off – collection."  (*Id.* at ¶15)

5

The Master Promissory Note plaintiff signed states:

> I authorize the lender, the guarantor, or their agents to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.
>
> . . .
>
> If I default, the default will be reported to *all* national credit bureau organizations and will significantly and adversely affect my credit history.

(Allen Deposition, 133-34, and ex. 1, at pp. 1-2)

The Borrower's Rights and Responsibilities Statement provides:

> **Credit Bureau Notification** – Information concerning the amount, disbursement, and repayment status (current or delinquent) of loans will be reported to one or more national credit bureau organizations on a regular basis. If I default on any loans made under this MPN, that default also will be reported to all national credit bureaus . . .

(Allen Deposition, ex. 3, ¶19)

**III.**

**A.    Libel Claim**

Defendant argues that summary judgment should be entered in its favor on plaintiff's libel claims because the claims are barred, as a matter of law, by the defendant's substantial truth, consent and absolute privilege defenses.

Under Colorado law, plaintiff must prove the following elements by a preponderance of the evidence to sustain a claim of libel: (1) the defendant published or caused to be

published, (2) written defamatory[1] statements, (3) about the plaintiff, and, (4) the publication of the defamatory statements caused special damages to the plaintiff. *See* CO-JICIV 22:5; *see, also, Walters v. Linhof*, 559 F.Supp. 1231, 1234 (D.Colo. 1983)(citing elements of defamation claim).

"Substantial truth is an absolute defense to a defamation claim." *Lindemuth v. Jefferson Cnty. School Dist. R-1*, 765 P.2d 1057, 1058 (Colo.App. 1988)(citing *Gomba v. McLaughlin*, 504 P.2d 337, 338 (1972)); *see also Gordon v. Boyles*, 99 P.3d 75, 81 (Colo.App. 2004). A statement is substantially true if "the substance" or "the gist of the matter" is true. *Gordon*, 99 P.3d at 81.

Plaintiff concedes in her response brief that the written statements made by defendant to the credit reporting bureaus that plaintiff's loans were "past due," "claim filed," "paid – collection," and "charge off - collection", were substantially true in the sense that plaintiff has never made any payments on the loans and, eventually, the loans were paid by the guarantor. Plaintiff argues, however, that because defendant omitted from its reports the material fact that the loans were disputed by the plaintiff before the first payment was due, defendant created the false and libelous impression that the loans were in default when, in fact, no payments were owed until the dispute was resolved.

Although the Colorado appellate courts have not specifically addressed the issue, courts in other jurisdictions have recognized that a defendant's substantial truth defense to a defamation claim may be defeated where the facts published are substantially true,

---

[1] A statement may be defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Burns v. McGraw-Hill Broadcasting, Inc.*, 659 P.2d 1351, 1357 (Colo. 1983)(citing CO-JICIV 22:7).

but the defendant omitted material facts which caused the publication to create a defamation impression. *See Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978)(holding that pertinent inquiry in defamation action is whether the "meaning reasonably conveyed by the published words is defamatory," and holding that "[t]ruth is available as an absolute defense only when the defamatory meaning conveyed by the words is true"); *McCullough v. Cook*, 679 So.2d 627, 632 (Miss. 1996)(citing *Memphis Publishing Co.*); *Huckabee v. Time Warner Entertainment Co.*, 19 S.W.3d 413, 425 (Tex. 2000)("A broadcaster's omission of facts may be actionable if it so distorts the viewers' perception that they receive a substantially false impression of the event"); *Toney v. WCCO Television, Midwest Cable and Satellite, Inc.*, 85 F.3d 383, 387, 389-96 (8th Cir. 1996) (concluding that Minnesota would recognize cause of action for implied defamation where defendant omits important facts); *Carson v. Lynch Multimedia Corp.*, 123 F.Supp.2d 1254, 1263 (D.Kan. 2000)(concluding that annual report contained false statement where report omitted material facts that created a false impression); *see also* W. Page Keeton, et al., *Prosser & Keeton*, *Law of Torts* §116, at 117 (Supp. 1988)(stating that defamation by implication occurs where "the defendant . . . creates a defamatory implication by omitting facts").

Where the alleged defamation is by implication, the defendant is only liable where the omitted facts are true, and where inclusion of the omitted facts in the publication would negate the defamatory impression. *See Mohr*, 108 P.3d 768, 776 (Wash. 2005); *McCullough*, 679 So.2d at 633. "Merely omitting facts favorable to the plaintiff or facts that the plaintiff thinks should have been included does not make a publication false and

8

subject to defamation liability."  *Mohr*, 108 P.3d at 776.

Assuming the Colorado courts would recognize an actionable claim in the above circumstances,[2] I recommend finding that Nelnet did not omit a true, material fact from its reports to the national credit bureaus which would have negated the defamatory impression – i.e., that plaintiff defaulted on her student loans.

Plaintiff argues that defendant should have reported that the loans were "disputed" because she notified the State of Colorado, her previous loan service provider, as early as June 2004, that she was applying for a discharge of her Stafford loans on the basis of a permanent disability, pursuant to ¶14 of the "loan disclosure agreement."  (Plaintiff's Answer to MSJ, Ex. 7)  According to plaintiff, the State sent her a "Loan Discharge Application" which she did not complete because the "terms of the discharge" in the application form differed from the terms stated in the loan disclosure agreement.  (Plaintiff's Answer, Ex. 8)  Plaintiff advised the Colorado Student Loan Program of her position that she was "eligible for discharge under the loan disclosure terms, but your discharge application wording makes me ineligible for discharge."  (*Id.*)  Plaintiff therefore advised the State that a dispute existed about the status of her loan and that the discrepancy between the terms of the loan discharge application and those contained in the loan disclosure agreement would have to be resolved by a court before she would make any payments on the loans.  (*Id.*)

On March 14, 2005, plaintiff responded to a letter from Nelnet notifying her that she

---

[2]Colorado case law recognizes that the fact-finder must consider the context of the entire story in determining whether the language used was defamatory.  *See Buns*, 659 P.2d at 1357.

had failed to make any payment on her student loans. (Plaintiff's Answer, Ex. 9) Plaintiff stated that the loans were "disputed" based on her previous claim to the State of a permanent and total disability. (*Id.*)

Plaintiff testified in her deposition that her physician could not fill out Nelnet's discharge papers because of the way they were worded. (Allen Deposition, at 149)

The Borrower's Rights and Responsibilities Statement advised plaintiff that her loan could be discharged "if a physician certifies that I am totally and permanently disabled as defined by the Act" and that plaintiff "may not receive a discharge based on a total and permanent disability based on a condition that existed before you applied for that loan, unless a physician certified that the condition substantially deteriorated after the loan was made."

The "Act" referenced in the Borrower's Rights and Responsibilities Statement is the Higher Education Act of 1965, 20 U.S.C. §1070, *et seq.* The regulations implementing the Act define "totally and permanently disabled" as "[t]he condition of an individual who is unable to work and earn money because of an injury or illness that is expected to continue indefinitely or result in death."  34 C.F.R. §682.200 (2006).[3]

The Federal Stafford Loan Plain Language Disclosure sent to plaintiff states that "[i]f you provide acceptable documentation that you are totally and permanently disabled, your loan is assigned to the Department of Education and conditionally discharged for up to three years. If you meet certain requirements during and at the end of the conditional

---

[3]This definition has remained unchanged in the applicable regulation since plaintiff signed the Master Promissory Note in 2001.

period, your loan will be discharged." (Allen Deposition, ex. 2, at ¶14)

Section 2 of the Loan Discharge Application plaintiff received from Nelnet states: "I certify that I have a total and permanent disability, as defined in Section 5." Section 5 provides:

> If you have a total and permanent disability, this means that you are unable to work and earn money because of an injury or illness that is expected to continue indefinitely or result in death. NOTE: (1) This standard may be different from standards used under other programs in connection with occupational disability or eligibility for social service benefits. (2) You cannot be considered to have a total and permanent disability if your condition existed at the time your loan(s) was made, unless your condition has substantially deteriorated so that you are not totally and permanently disabled.

(Warner Affidavit, Ex. B, Section 5)

Section 3 of the Loan Discharge Application states: "I certify that, in my best professional judgment, the borrower identified above is unable to work and earn money because of an injury or illness that is expected to continue indefinitely or result in death. I understand that a borrower who is currently able or who is expected to be able to work and earn money, even on a limited basis, is not considered to have a total and permanent disability." (Warner Affidavit, Ex. B)

Plaintiff appears to rely on the language of the plain language disclosure statement in arguing that her loan payments are "disputed" because the Master Promissory Note disability conditional discharge requirements are different than the requirements contained in the discharge application she received from Nelnet. However, the plain language disclosure statement is merely a simplified summary of the terms and conditions of the

11

Borrower's Rights and Responsibilities Statement. The Borrower's Rights and Responsibilities Statement, which is incorporated by reference into the Master Promissory Note, contains the same language regarding the conditions of a disability discharge as does the loan discharge application used by Nelnet.

Plaintiff admits that she is not eligible for discharge under the terms of the loan discharge application. (Answer Brief, Ex. 8) Presumably, plaintiff has not completed the loan discharge application because her physician is unable to certify that the plaintiff cannot perform any work and earn money, even on a limited basis. The definition of totally and permanently disabled contained in the discharge application and the Master Promissory Note, which is consistent with the Higher Education Act's definition of totally and permanently disabled, is not the same as the definition under the Social Security Act or other federal welfare laws.

Because plaintiff has never completed and returned Nelnet's loan discharge application, there is not, and never has been, a legitimate dispute pending about the status of plaintiff's loans. Plaintiff has thus failed to show that defendant omitted a true material fact in its reports to the national credit bureaus which would have negated the defamatory implication of defendant's publications. Moreover, defendant has successfully proven its affirmative defense of substantial truth because plaintiff concedes that she has never made a payment on her student loans. Accordingly, I recommend that plaintiff's libel claims be dismissed.[4]

---

[4] I need not address defendant's other asserted defenses of consent and absolute privilege.

B.      Harassment claim

Plaintiff also asserts a harassment claim against Nelnet under the Colorado Consumer Credit Code, COLO.REV.STAT. ("C.R.S.") §5-1-101, *et seq.*, which prohibits unconscionable conduct in the collection of a debt arising from a consumer credit transaction.  *See* C.R.S. §5-5-109(2).

The Colorado Consumer Credit Code does not apply to "[l]oans made, originated, disbursed, serviced, or guaranteed by an agency, instrumentality, or political subdivision of the state pursuant to article 3.1 of title 23, C.R.S." Section 5-1-202(1)(f), C.R.S.  Article 3.1 of Title 23 of the Colorado Revised Statutes creates, *inter alia*, the Colorado Student Loan Program.   *See* C.R.S. §23-3.1-106 ("There is hereby established a student loan program . . . formally and legally known as and designated as the Colorado student loan program").  Article 3.1 also authorizes the Colorado Student Loan Program to guarantee federal student loans such as the Federal Stafford Loans made to the plaintiff.   *See* C.R.S. §23-3.1-111(2) ("The division may enter into contracts or other agreements . . . with private or public entities to guarantee or reinsure student loans").

Plaintiff's loans were guaranteed by the State of Colorado through the Colorado Student Loan Program.  (*See* Master Promissory Note; Letter from the State of Colorado to Diana Allen dated July 14, 2003, attached to Reply brief).  Accordingly, plaintiff's "harassment" claim against Nelnet is not actionable under the Colorado Consumer Credit Code.

Alternatively, plaintiff asserts her claim under the federal Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. §1692, *et seq.*  The Act provides that a "debt

13

collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d. Such prohibited conduct includes: "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. §1692d(5).

Nelnet argues that plaintiff's FDCPA claim must be dismissed because plaintiff cannot establish that Nelnet is a "debt collector" within the meaning of the Act.

The plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status. *See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2d Cir. 2004).

The Act defines "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. The term does not include–
> . . .
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person; . . .

15 U.S.C. §1692a(6).

Nelnet became the servicer of plaintiff's loans on November 1, 2004. The loans

did not go into default until April 2005. Defendant thus contends that the evidence establishes that Nelnet is excluded from the statutory definition of "debt collector" under 15 U.S.C. §1692a(6)(F)(iii).

Plaintiff argues, however, that Nelnet is a "debt collector" because Premiere Credit of North America, LLC, an entity in which Nelnet has a fifty percent ownership interest (*see* Answer brief, Ex. 11), attempted to collect the debt on Nelnet's behalf. Plaintiff testified in her deposition that representatives of Premiere Credit Union, claiming to represent Nelnet, called her repeatedly at home, at odd hours, for a period of four to five months. (Allen Deposition, at 14-20)

The FDCPA exempts creditors collecting debts acquired before default. 15 U.S.C. § 1692a(6)(F). The exemption is inapplicable, however, in situations where the creditor "uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).

There is no evidence that Nelnet attempted to collect plaintiff's loan debt under a false or assumed name. A creditor is not a "debt collector" under the Act simply because it retains its corporate affiliate to collect its debt. *See Harrison v. NBD, Inc.*, 968 F.Supp. 837, 843 (N.D.N.Y. 1997)(holding that a creditor which retains a separate and distinct entity to collect its debts, albeit a corporate affiliate, is not converted into a "debt collector" under the FDCPA); *see also Meads v. Citicorp Credit Services, Inc.*, 686 F.Supp. 330, 333-34 (S.D. Ga. 1988)(same).

Moreover, a parent corporation cannot be held liable for any violations of the FDCPA by its subsidiaries unless the subsidiary is so dominated by the parent that the two

corporate entities constitute a single economic enterprise; and, the parent corporation controls almost all aspects of the subsidiary's debt collection. *See Harrison*, 968 F.Supp. at 845; *Aubert v. American General Finance, Inc.*, 137 F.3d 976, 979 (7th Cir. 1998); *Jenkins v. Union Corp.*, 999 F.Supp. 1120, 1142-43 (N.D.Ill. 1998); *United States v. ACB Sales & Serv., Inc.*, 590 F.Supp. 561, 574 (D. Ariz. 1984).

Plaintiff has not stated any facts, or proffered evidence, to show that Nelnet and Premiere Credit Union constitute a single economic enterprise, or that Nelnet controls most of Premiere Credit Union's debt collection procedures. Accordingly, I recommend finding that there are no material factual issues remaining about Nelnet's status as a debt collector under the FDCPA. Because Nelnet was a creditor collecting its own debts in its own name, and possibly through a separate and distinct corporate entity, before plaintiff's loans went into default, Nelnet is not a debt collector under the Act. Plaintiff therefore cannot bring a claim against Nelnet under 15 U.S.C. §1692d.

**IV.**

For the reasons set forth above, it is

**RECOMMENDED** that the Motion of Defendant Nelnet, Inc., for Summary Judgment on All Claims Asserted in Plaintiff's Complaint [Doc. #42; filed December 14, 2006] be **GRANTED**. It is

**FURTHER RECOMMENDED** that this action be **DISMISSED WITH PREJUDICE**.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for**

**the District of Colorado. The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated June 19, 2007.

BY THE COURT:

s/ O. Edward Schlatter
O. EDWARD SCHLATTER
United States Magistrate Judge